UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER RIVERA,

                 Plaintiff,

   -against-

PLS CHECK CASHERS OF NEW YORK, INC.,
and KATHERINE BEARD GUZMAN,
*individually,*

                 Defendants.
------------------------------------------------------------X

Case No.

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

Plaintiff, JENNIFER RIVERA, by and through her attorneys, PHILLIPS &
ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon
information and belief, as follows:

### Nature of the Case

1.   Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
   U.S.C. § 2000e, *et seq.*; the New York State Human Rights Law, New York Executive Law
   § 296, *et. seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City
   Administrative Code § 8-502(a), *et seq.* ("NYCHRL"). Plaintiff seeks damages to redress
   the injuries Plaintiff has suffered as a result of being discriminated against based on her
   sex/gender (female), and unlawfully terminated in retaliation after alerting her employer of
   her pregnancy.

2.   Plaintiff also complains pursuant to the Wage Theft Prevention Act, New York Labor Law
   § 195, *et seq.* and seeks to redress the damages she has suffered as a result of Defendants'
   failure to give her written notice of wage rates, including, *inter alia*, her rate of pay.

1

**Jurisdiction and Venue**

3.  Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

4.  This Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of the State of New York.

**Procedural Prerequisites**

6.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7.  Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated June 23, 2022 with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

8.  This Action is being commenced within ninety (90) days of receipt of said Notice.

9.  Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the transmittal letter to the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

**Parties**

10. Plaintiff is a resident of the County of Bronx in the State of New York.

11. At all times material, Defendant PLS CHECK CASHERS OF NEW YORK, INC. ("PLS") is and was a domestic business corporation organized in and operating under the laws of the State of New York, with its principal place of business located at One South Wacker Drive, 36th Floor, Chicago, Illinois 60606.

12. At all times material, Defendant PLS owns, operates, and maintains stores nationwide. Defendant PLS provides money orders and check cashing services for their customers, including the location located at 37 West 43rd Street, New York, New York 10036 ("the Location").

13. At all times material, Defendant PLS was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

14. At all times material, Defendant PLS had 20 or more employees for each working day in each of 20 or more calendar weeks in 2021.

15. At all times material, Defendant PLS was Plaintiff's employer under Title VII.

16. At all times material, Defendant PLS was Plaintiff's employer under the NYSHRL.

17. At all times material, Defendant PLS was Plaintiff's employer under the NYCHRL.

18. At all times material, Defendant PLS was Plaintiff's employer under the NYLL.

19. At all times material, Defendant KATHERINE BEARD GUZMAN ("GUZMAN") is and was employed by Defendant PLS as a District Manager.

20. At all times material, Defendant GUZMAN was Plaintiff's manager and had managerial and supervisory authority over Plaintiff.

21. Defendant GUZMAN had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment, and had the power to direct Plaintiff's daily work activities.

22. At all times material, Plaintiff was an employee of Defendant PLS and Defendant GUZMAN.

23. Defendant PLS and Defendant GUZMAN are at times collectively referred to as "Defendants."

24. At all times material, all parties mentioned herein worked and/or continue to be employed at the Location.

**Material Facts**

25. On or about June 23, 2021, Plaintiff applied to Defendant PLS for the position of a Customer Service Representative.

26. On or about July 1, 2021, Plaintiff completed assessment tests relating to the position of Customer Service Representative for Defendant PLS.

27. On or about July 16, 2021, Plaintiff had an interview with "Marielis," a supervisor with Defendant PLS.  At the conclusion of the interview, "Marielis" stated that she would need to speak with her District Manager, Defendant Guzman, to make the determination if Plaintiff was hired or not.

28. Later that day, Plaintiff received an e-mail requesting that she submit for a drug test and a background check.

29. On or about July 23, 2021, Plaintiff received a message from "Marielis" on WhatsApp informing her that she "passed the test" and that Plaintiff will be attending orientation that following Monday.

30. Plaintiff understood this as an offer of employment with Defendant PLS for the position of Customer Service Representative making approximately $15.00 per hour, or approximately $31,200 per year.

4

31.  Plaintiff was qualified for her position and performed her duties well.

32.  On or about July 25, 2021, Plaintiff received a WhatsApp message from "Marielis" informing her of the details of the orientation, including the store that Plaintiff will be working in.

33.  On or about July 26, 2021, Plaintiff attended orientation for the role of Customer Service Representative with Defendant PLS.

34.  On or about July 26, 2021, Plaintiff informed "Marielis" via WhatsApp that Plaintiff had a prenatal appointment on July 29 at 10:30 A.M. In response, "Marielis" asked Plaintiff "Are you pregnant?" Plaintiff stated, "Yes I am expecting is that ok?" "Marielis" then messaged back, "Why you didn[']t  told me at the interview?" Confused, Plaintiff responded "That I was pregnant?"  "Marielis" then said "Yeah," and provided Plaintiff with the address of the Location where she would be training and working.

35.  On or about July 27, 2021, Plaintiff went to work at the Location. Defendant GUZMAN arrived at the Location sometime later.  Plaintiff approached Defendant GUZMAN and stated, in sum and substance, "Hi Katherine, it is great to meet you. I heard a lot of nice things about you." Defendant GUZMAN snapped at Plaintiff and stated, in sum and substance "who told you that? I'm not nice." Plaintiff was taken aback and continued to do her job.

36.  That same day, Defendant GUZMAN and another employee were sorting out uniformed shirts at the Location. Plaintiff approached Defendant GUZMAN and requested a larger uniformed shirt to wear as she was pregnant.  In response, Defendant GUZMAN, raised her voice, in front of Plaintiff's co-workers and shouted, in sum and substance, "you pregnant?! Why didn't you say anything in your interview?" Plaintiff was shocked. Defendant

GUZMAN began to walk away and stated, in sum and substance, "another one with maternity leave without pay. Hold on, I have to sit down." Defendant GUZMAN went on to say to Plaintiff, in sum and substance, "you're supposed to tell the company that you're pregnant. It is better for us to know sooner than later just in case anything happens. There was another employee that was here who was pregnant who expected to have maternity leave and quit because we wouldn't give her maternity leave." Plaintiff was confused and surprised by Defendant GUZMAN's comments.

37.   Defendant GUZMAN went on to say, in sum and substance, "if I interviewed you, I wouldn't have hired you. I don't hire pregnant individuals. I give them the option to work after they give birth. When are you due?" Stunned, Plaintiff informed Defendant GUZMAN that she was expected to give birth on January 25, 2022. Defendant GUZMAN scoffed and stated, in sum and substance, "you think you're going to get paid during maternity leave? Oh, so you're only going to be here for 4 months and then you're leaving?" Plaintiff was extremely uncomfortable at what Defendant GUZMAN was saying.

38.   Plaintiff was floored at Defendant GUZMAN's reaction as Defendant GUZMAN was herself, pregnant.

39.   On or about July 28, 2021, Plaintiff informed "Catherine," a supervisor at the Location, that Plaintiff had a prenatal appointment the following day at 10:30 A.M.   In response, "Catherine" stated that she would notify Defendant GUZMAN of the appointment.

40.   On or about July 29, 2021, Plaintiff went to her doctor for a pre-natal doctor's appointment. After Plaintiff's doctor's appointment, she went to work at the Location and provided Defendants with a doctor's note stating that she was at an appointment.

41.   On or about July 30, 2021, Plaintiff was informed that she failed the assessment test that she took on July 1, 2021, and, in turn, she was terminated. Plaintiff was devastated.

42.   Plaintiff was confused about the reason for her termination as "Marielis" had previously informed her that she passed the test.

43.   It is clear, due to the close temporal proximity between Plaintiff informing Defendants of her pregnancy, that she was unlawfully terminated because she was pregnant. This is especially true given the discriminatory comments made by "Marielis" and Defendant GUZMAN surrounding Plaintiff's pregnancy.

44.   Defendants terminated Plaintiff's employment solely because of Plaintiff's pregnancy, and in retaliation for request for leave to attend her pre-natal appointment.

45.   The above are just some of the comments and conduct which contributed to the discrimination that Plaintiff experienced while employed by Defendants.

46.   Plaintiff feels offended, disturbed, and humiliated by the blatantly unlawful, discriminatory, and retaliatory termination.

47.   Plaintiff has been unlawfully discriminated against, humiliated, degraded, and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

48.   Defendants' actions and conduct were intentional and intended to harm Plaintiff.

49.   As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

50.   Plaintiff has further experienced severe emotional distress.

51. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

52. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

53. As such, Plaintiff demands punitive damages as against Defendants, jointly and severally.

**First Cause of Action for Discrimination
Under Title VII
(Not Against Individual Defendant)**

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.*, for relief based upon the unlawful employment practices of Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination and creating a hostile work environment in employment based, in whole or in part, upon an employee's sex.

56. Defendants PLS engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e *et. seq.*, by discriminating against Plaintiff because of her gender.

57. Defendants PLS violated the sections cited herein as set forth.

58. Plaintiff is entitled to the maximum amount allowed under this statute.

**Second Cause of Action for Retaliation
Under Title VII
(Not Against Individual Defendant)**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled

     "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

61. Defendants PLS violated the sections cited herein as set forth.

62. Plaintiff is entitled to the maximum amount allowed under this statute.

## Third Cause of Action for Discrimination
## Under the New York State Executive Law
## (Against All Defendants)

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

     complaint.

64. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

65. Defendants PLS and GUZMAN violated the section cited herein as set forth.

66. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Discriminatory Discharge
### Under the New York State Executive Law
### (Against All Defendants)

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

    complaint.

68. New York State Executive Law § 296(1) provides that:

    > It shall be an unlawful discriminatory practice: (a) For an employer
    > or licensing agency, because of an individual's age, race, creed,
    > color, national origin, sexual orientation, military status, **sex**,
    > disability, predisposing genetic characteristics, familial status,
    > marital status, or domestic violence victim status, to refuse to hire
    > or employ or to bar or to discharge from employment such
    > individual or to discriminate against such individual in
    > compensation or in terms, conditions or privileges of employment.

69. Defendants PLS and GUZMAN violated the section cited herein as set forth.

70. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fifth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Not Against Defendant PLS)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

    this complaint.

72. New York State Executive Law § 296(6) provides in pertinent part, that it shall be an

    unlawful discriminatory practice "…for any person to aid, abet, incite, compel or coerce the

    doing of any acts forbidden under this article, or attempt to do so."

73. Defendant GUZMAN violated the statute cited herein as set forth.

74. Plaintiff is entitled to the maximum amount allowed under this statute.

10

## Sixth Cause of Action for Retaliation
## Under the New York State Executive Law
## (Against All Defendants)

75.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

76.   New York State Executive Law § 296(7) provides that:

It shall be an unlawful discriminatory practice for any person
engaged in any activity to which this section applies to retaliate or
discriminate against any person because he or she has opposed any
practices forbidden under this article because he or she has filed a
complaint, testified or assisted in any proceeding under this article.

77.   Defendants PLS and GUZMAN violated the sections cited herein as set forth.

78.   Plaintiff is entitled to the maximum amount allowed under this statute.

## Seventh Cause of Action for Discrimination
## Under the New York City Administrative Code
## (Against All Defendants)

79.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

80.   New York City Administrative Code § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer
or an employee or agent thereof, because of the actual or perceived
age, race, creed, color, national origin, gender, disability, marital
status, partnership, status, caregiver status, sexual orientation,
uniformed service, or alienage or citizenship status of any person, to
refuse to hire or employ or to bar or to discharge from employment
such person or to discriminate against such person in compensation
or in terms, conditions or privileges of employment.

81.   Defendants PLS and GUZMAN violated the section cited herein as set forth.

82.   Plaintiff is entitled to the maximum amount allowed under this statute.

### Eighth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Not Against Defendant PLS)

83.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84.   New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice "…for any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

85.   Defendant GUZMAN violated the section cited herein as set forth.

### Ninth Cause of Action for Retaliation
### Under the New York City Administrative Code
### (Against All Defendants)

86.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87.   New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer…to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

88.   Defendants PLS and GUZMAN violated the section cited herein as set forth.

89.   Plaintiff is entitled to the maximum amount allowed under this statute.

### Tenth Cause of Action for Violations
### Under the Wage Theft Prevention Act

90.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91.   Defendants failed to provide Plaintiff written notice regarding: her regular rate of pay, how she was to be paid logistically, her "regular payday," the official name of the employer and

any other names used for business, the address and telephone number of the employer's main office or principal location in violation of NYLL § 195.

92. Plaintiff has been damaged as a result of Defendants' failure to provide her with such written notice.

93. As Defendants' failure to provide the aforementioned notices occurred for the entirety of Plaintiff's employment, she is entitled to the maximum amount available under the law.

### Eleventh Cause of Action for Vicarious Liability
### Under the New York City Administrative Code
### (Not Against Defendant GUZMAN)

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95. New York City Administrative Code § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor.  This sub-section states:

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

> c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent

contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

96.   Defendant PLS violated the section cited herein as set forth.

### JURY DEMAND

97.   Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; the New York State Human Rights Law, New York State Executive Law § 296, *et. seq.*; and the New York City Administrative Code, § 8-107, *et. seq.*, in that Defendants discriminated and retaliated against Plaintiff, and terminated Plaintiff based on her sex/gender.

B.   Declaring that Defendants failed to abide by the proscribed laws of the NYLL for failing to provide Plaintiff with wage notices;

C.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.   Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.   Awarding Plaintiff punitive damages;

F.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
June 30, 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:   _____
Stefanie L. Shmil
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sshmil@tpglaws.com